IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROCCO POLUTRO<br>2839 South 9th Street<br>Philadelphia, PA 19148 | : | |
| | : | |
| | : | CASE NO.    2:26-cv-04316 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| PHILADELPHIA PERFORMING<br>ARTS CHARTER SCHOOL<br>1600 Vine Street, 8th Floor<br>Philadelphia, PA 19102 | : | |
| | : | |
| CHARMAINE BAILEY<br>4700 Mitchell Street, Apt #109<br>Philadelphia, PA 19128-3871 | : | |
| | : | |
| ANTHONY MILLER<br>6039 Locust Street<br>Philadelphia, PA 19139-3735 | : | |
| | : | |
| JEANIE WISE<br>2510 S. Iseminger Street<br>Philadelphia, PA 19148-4318 | : | |
| | : | |
| NINA WISE<br>2510 S. Iseminger Street<br>Philadelphia, PA 19148-4318 | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

Plaintiff, Rocco Polutro, by and through his attorneys, Timoney Knox, LLP, makes the

following Complaint against Defendants, Philadelphia Performing Arts Charter School,

Charmaine Baliey, Anthony Miller, Jeanie Wise, and Nina Wise, and alleges as follows:

1

**INTRODUCTION**

1.     This is a civil rights, discrimination, and retaliation action arising from Defendant Philadelphia Performing Arts Charter School's years-long failure to protect Plaintiff, a gay and gender-nonconforming student, from severe, pervasive, and objectively offensive harassment, discrimination, and physical assaults based upon sex, gender nonconformity, gender stereotyping, and actual or perceived sexual orientation. Despite repeated complaints from Plaintiff, his mother, teachers, counselors, and other school personnel over multiple school years, Defendant Philadelphia Performing Arts Charter School failed to take effective action to stop the harassment, failed to adequately investigate complaints, failed to protect Plaintiff, and instead repeatedly treated Plaintiff as a disciplinary problem rather than a victim.

2.     Defendant Philadelphia Performing Arts Charter School's acts and omissions included, but were not limited to:

   a.  Ignoring repeated reports of sex-based harassment and discrimination;

   b.  Failing to adequately investigate complaints and reported assaults;

   c.  Failing to implement effective remedial measures reasonably calculated to stop the harassment;

   d.  Failing to provide Plaintiff and his mother with notice of Title IX rights, procedures, or the identity of any Title IX Coordinator;

   e.  Punishing Plaintiff more harshly than students who harassed and assaulted him;

   f.  Subjecting Plaintiff to hostile and retaliatory treatment after Plaintiff and his mother repeatedly complained about discrimination;

   g.  Using physical force against Plaintiff while he was experiencing a panic attack and emotional crisis; and

h. Threatening Plaintiff with expulsion after he and his mother complained about years of discrimination and harassment.

3. As a direct and foreseeable result of Defendants' conduct, Plaintiff suffered physical injuries, severe emotional distress, anxiety, depression, educational harm, loss of educational opportunities, and other damages. Plaintiff brings this action to vindicate his rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, the Pennsylvania Human Relations Act, and Pennsylvania common law.

## PARTIES

4. Plaintiff, Rocco Polutro (hereinafter referred to as "Plaintiff"), is an adult male citizen of the Commonwealth of Pennsylvania and resides at 2839 South 9th Street, Philadelphia, PA 19148, which is within this judicial district.

5. Defendant, Philadelphia Performing Arts Charter School (hereinafter referred to as "PPACS"), is a Pennsylvania charter school with a business address located at 1600 Vine Street, 8th Floor, Philadelphia, PA 19102, which is within this judicial district.

6. At all material times, Defendant PPACS was receiving federal funding and/or assistance, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

7. At all relevant times, Defendant PPACS acted through its agents, employees, administrators, security personnel, servants, and representatives, including Defendants Charmaine Bailey, Anthony Miller, Jeanie Wise, and Nina Wise, who were acting under color of state law and/or within the course and scope of their employment and authority delegated by Defendant PPACS.

8. At all relevant times, Defendant PPACS maintained policies, customs, practices, and procedures concerning student discipline, student safety, bullying prevention, harassment

investigations, climate and culture, and responses to complaints of student misconduct. As set forth more fully herein, Defendant PPACS's administrators and employees repeatedly applied and implemented those policies, customs, practices, and procedures in a manner that failed to adequately investigate complaints of sex-based harassment, failed to protect Plaintiff from known harassment, failed to implement effective remedial measures, and repeatedly treated Plaintiff as a disciplinary problem rather than a victim of discrimination.

9.    Defendant Charmaine Bailey is an adult individual who resides at 4700 Mitchell Street, Apt #109, Philadelphia, PA 19128-3871. At all relevant times hereto, Defendant Charmaine Bailey was employed by Defendant PPACS as the Dean of the High School and was an administrator responsible for student discipline, student safety, and response to harassment complaints, and acted under color of state law. She is sued in her individual capacity.

10.    Defendant Anthony Miller is an adult individual who resides at 6039 Locust Street, Philadelphia, PA 19139-3735. At all relevant times hereto, Defendant Anthony Miller was employed by Defendant PPACS as the Head of Climate and Culture and was an administrator responsible for student discipline, student safety, and response to harassment complaints, and acted under color of state law. He is sued in his individual capacity.

11.    Defendant Jeanie Wise is an adult individual who resides at 2510 S. Iseminger Street, Philadelphia, PA 19148-4318. At all relevant times hereto, she was employed by Defendant PPACS as a security guard and was acting within the course and scope of her employment with Defendant PPACS. She is sued in her individual capacity.

12.    Defendant Nina Wise is an adult individual who resides at 2510 S. Iseminger Street, Philadelphia, PA 19148-4318. At all relevant times hereto, she was employed by Defendant

4

PPACS as a security guard and was acting within the course and scope of her employment with Defendant PPACS. She is sued in her individual capacity.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and the laws of the United States, including Title IX and 42 U.S.C. § 1983.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

16.    Plaintiff is a 19-year-old gay male who was a minor throughout most of the events described herein.

17.    Plaintiff attended Defendant PPACS from the beginning of his kindergarten school year (2010-2011) through January 11, 2023 of his 11th grade school year (2022-2023), at which time his mother withdrew him from PPACS to attend a Pennsylvania cyber charter school.

### Wrongful Treatment, Harassment and Bullying of Plaintiff at PPACS During Plaintiff's Middle School Years

18.    Plaintiff was visibly gender-nonconforming and perceived by peers as being gay from a young age – traits that made him a frequent target of harassment.

19.    Beginning in Plaintiff's 5th grade school year (2015-2016), when Plaintiff was promoted to PPACS's Vine Campus for middle school, Defendant PPACS subjected Plaintiff to an environment permeated with relentless sex-based, gender-stereotyping based, and sexual-orientation-based harassment, including verbal slurs, physical assaults, and humiliation, at the hands of students, staff, and administrators at PPACS.

5

20.     During his middle school years, from 5th through 8th grade, Plaintiff was routinely called "faggot," a "girl" and other derogatory slurs, and was mocked for his appearance and mannerisms. PPACS students regularly asked why he was not wearing a dress and why he was wearing the wrong uniform (i.e., the boys' uniform). PPACS students pulled his hair and physically tripped, shoved, and assaulted him in the school hallways, bathrooms, classrooms, the cafeteria, and on the school bus.

21.     Many physical assaults of Plaintiff by PPACS students occurred during Plaintiff's middle school years, including students hitting his glasses off his face at school, knocking Plaintiff down, striking his head, and forcibly shoving him into objects.

22.     For instance, in 5th grade, a PPACS student, Student C.C., hit Plaintiff's glasses off his face while at school. Another PPACS student, Student M.H., knocked Plaintiff over and nearly smashed Plaintiff's entire school project.

23.     In 6th grade, another PPACS student, Student N.C. – one of Plaintiff's primary bullies over the years at PPACS – harassed and physically assaulted Plaintiff on the school bus, at one point shoving Plaintiff's head into a window.

24.     Plaintiff's mother was forced to pay out of pocket to transport Plaintiff to and from school in order to avoid the other PPACS students that constantly harassed and bullied him on the school bus.

25.     PPACS students, at times, would shake the bathroom stall that Plaintiff was occupying and throw wet paper towels over the stall at him.

26.     PPACS students would also regularly throw food at Plaintiff during the lunch period in the cafeteria.

27.　　While at school at PPACS, Plaintiff attempted to avoid the harassment by hiding in stairwells, in the school counselor's office, and in classrooms, demonstrating the severity of the hostile environment.

28.　　During Plaintiff's middle school years at PPACS, both Plaintiff and his mother repeatedly communicated and reported the bullying and assaults to school personnel, including but not limited to Plaintiff's teachers and PPACS school administrators, including Ms. Chiconte (the Principal), and Defendant Anthony Miller (the Head of Climate and Culture).

29.　　Defendant PPACS's administrators and officials with authority to institute corrective measures had actual knowledge that Plaintiff was being subjected to repeated harassment because he was gay, because he was perceived as feminine, because he did not conform to traditional male gender stereotypes, and because of his gender expression, yet failed to take prompt and effective action reasonably calculated to stop the harassment.

30.　　Instead, Defendant PPACS minimized, ignored, or dismissed Plaintiff's and his mother's many complaints and allowed known aggressors to continue unchecked.

31.　　Defendant PPACS's repeated failure to address known harassment emboldened Plaintiff's aggressors and contributed to the escalation of the abuse.

32.　　Over multiple school years, Defendant Anthony Miller personally received complaints from Plaintiff, Plaintiff's mother, teachers, counselors, and other staff that Plaintiff was being targeted because he was gay, perceived as feminine, and failed to conform to traditional male stereotypes. Despite this knowledge, Defendant Anthony Miller failed to take effective action to address the reported harassment and later accused Plaintiff of "playing the victim" and threatened him with expulsion after Plaintiff and his mother complained about discrimination and harassment.

33.    Defendant PPACS repeatedly failed to address most of the reported incidents and the underlying bullying, harassment, and discrimination on the basis of sex/gender, gender stereotyping, and perceived/actual sexual orientation that Plaintiff endured at PPACS.

34.    Despite years of reports by Plaintiff, Plaintiff's mother, teachers, counselors, and other school personnel concerning harassment based on sex, gender stereotyping, gender nonconformity, and sexual orientation, Defendant PPACS never informed Plaintiff or his mother of any Title IX grievance procedures, never identified any Title IX Coordinator, never advised them of Title IX rights or protections, never referred the complaints through a Title IX process, and never initiated a Title IX investigation.

35.    When – after years of prolonged provocation – Plaintiff eventually defended himself in response to a PPACS student physically bumping him in the chest and mocking him for the way he spoke, Defendant PPACS responded by punishing and suspending Plaintiff without fully investigating what had occurred and without addressing the discriminatory harassment that precipitated the incident in the first place.

36.    Defendant PPACS's response communicated to PPACS students and staff that harassment of Plaintiff was tolerated and that Plaintiff would be punished for reporting or resisting abuse.

37.    The effect of the severe and pervasive bullying that Plaintiff endured during his middle school years – from 5th through 8th grade – particularly after Plaintiff came out as gay in 8th grade – was substantial.

38.    Plaintiff felt very disconnected to school and his peers and had minimal social engagement.

39. The constant and pervasive bullying by his peers created a hostile environment at PPACS that made Plaintiff feel like he was being tortured daily.

40. As a result of the school bullying and harassment in middle school, Plaintiff experienced depression, severe anxiety and regularly displayed physical symptoms related to his anxiety, including frequent panic attacks, gastrointestinal issues, and other physical ailments both at home – particularly before school – and at school.

### Wrongful Treatment, Harassment and Bullying of Plaintiff at PPACS During Plaintiff's High School Years

### 9th Grade School Year (2020-2021)

41. During Plaintiff's 9th grade school year (2020-2021), the PPACS school building was closed due to the COVID-19 pandemic and Defendant PPACS provided instruction using a distance learning/virtual model. Plaintiff struggled significantly with the transition to high school as the bullying and harassment of Plaintiff continued in the virtual environment.

42. Plaintiff's 9th grade teachers at PPACS had actual knowledge of the bullying that Plaintiff had endured at PPACS, as well as the ongoing bullying and harassment that was occurring that school year in the virtual environment.

43. Plaintiff's 9th grade teachers documented that he was being bullied by his peers in his educational records and they also provided input regarding his significant challenges with work completion and with his need for additional academic support.

### 10th Grade School Year (2021-2022)

44. Upon returning to in-person learning for 10th grade (2021-2022) at PPACS, Plaintiff was immediately subjected to severe bullying and harassment based on sex/gender, gender stereotyping, and sexual orientation, and the relentless torture Plaintiff was subjected to continued that entire 10th grade school year.

9

45.    The harassment occurred openly in classrooms, bathrooms, hallways, and common areas -- often in the presence of PPACS staff.

46.    Almost every day in the high school at PPACS, there was some form of verbal and physical abuse, slurs, harassment, bullying and/or assault on Plaintiff.

47.    PPACS students routinely used slurs, calling Plaintiff a "fag", "faggot", "fucking fag", "fucking faggot", "pussy" and "fucking pussy" repeatedly.

48.    PPACS students also regularly mocked Plaintiff, calling him a "girl", making negative comments about how he dressed, about the makeup he wore, and about his sexual orientation.

49.    PPACS students also threw items at Plaintiff in school.

50.    When Plaintiff was in the stall in the school bathroom, students threw toilet paper, water bottles and other items at Plaintiff. PPACS students banged on the doors and walls of the stalls and climbed onto the top of the stalls when Plaintiff was using them, mocking and berating Plaintiff while doing so.

51.    The bathroom harassment became so extreme and intolerable that Plaintiff could not safely use the student restrooms at school. Plaintiff had to file a request to use the staff restroom instead, which was initially resisted by the PPACS administrators but was finally approved after a significant delay.

52.    As a direct result of Defendant PPACS's failure to intervene and to address the known bullying and harassment that was occurring at school, Plaintiff suffered panic attacks, severe anxiety, depression, physical illness, gastrointestinal issues, declining academic performance, and social withdrawal.

53.    Plaintiff continued to feel disconnected from school and from his male peers especially.

54.    Plaintiff became fearful and anxious to attend school and was often distracted while in his academic classes – becoming more focused on dealing with the constant bullying and harassment directed at him instead of learning.

55.    Plaintiff often texted his mother asking her to pick him up early from school and he was often sent home early by PPACS due to his severe anxiety and anxiety-related gastrointestinal issues.

56.    This led to increased absences from school that school year and substantial missed instructional time, which only further compromised Plaintiff's academic performance, and exacerbated his depression and anxiety even more, as he fell further behind his peers academically.

57.    Additionally, while Plaintiff had many talents in the arts such as acting, modeling, painting, costume design and make-up and was in The String Theory Players Club – which had been a preferred extracurricular activity for Plaintiff central to his education and identity – Plaintiff withdrew from the group during his 10th grade school year as a result of the bullying and harassment that was occurring at school.

58.    By the middle of 10th grade, Plaintiff's mother returned him to private counseling outside of school in order to help him to process his increased emotional/social struggles that were occurring as a result of the severe bullying that was regularly occurring at PPACS.

59.    Both Plaintiff and Plaintiff's mother repeatedly reported and communicated ongoing concerns of harassment and bullying to PPACS personnel during Plaintiff's 10th grade school year, including but not limited to school administrators, school counselors and teachers.

11

60.    Defendant PPACS had extensive documentation of Plaintiff's distress, including teacher reports, counselor notes, evaluations, IEP documents, and direct parental complaints.

61.    Defendant PPACS administrators, including Defendants Anthony Miller and Charmaine Bailey, were repeatedly informed that Plaintiff was being subjected to harassment because he was gay, because he was perceived as feminine, because he did not conform to traditional male stereotypes, and because of his gender expression, and understood that the harassment was not ordinary peer conflict or generalized bullying.

62.    For instance, in January/February 2022, when PPACS conducted its triennial reevaluation of Plaintiff, Plaintiff's mother reported to PPACS's evaluator that she had significant difficulties with getting Plaintiff to school that school year due to Plaintiff's anxiety, panic attacks and reported stomach issues due to peer conflicts.

63.    On the *Behavior Assessment System for Children – Third Edition* ("BASC-3"), which was provided to Plaintiff's teachers as part of his reevaluation, Plaintiff's teachers' ratings were significantly elevated in many areas, meaning Plaintiff's teachers were not only aware, but very concerned about Plaintiff's emotional behavior, specifically his panic attacks, the school bullying he was subject to, his self-control, depression, and attention.

64.    The results of Plaintiff's own self-report scores also were very concerning, specifically with regard to school problems. Significantly, Plaintiff endorsed item responses at that time indicating that he NEVER felt safe at school, SOMETIMES felt sad, felt/thought no one understood him, OFTEN had trouble controlling his thoughts, and ALMOST ALWAYS hated school.

12

65.    Sadly, while Defendant PPACS was an arts school that allegedly wanted students to be creative and express their artistic nature, PPACS completely failed to protect their students who tried to express themselves freely, including Plaintiff.

66.    There were times that Plaintiff would leave class upset because another PPACS student was calling him a "faggot" (or some derogatory variation) in the classroom, and, after leaving, Plaintiff's intention was to calm down, but PPACS staff in the hallways would yell at him for being in the hall or for going to the bathroom.

67.    On one occasion in November 2021, Plaintiff visited the school counselor, Ms. Nicole Steubben, related to an incident of bullying/homophobia, after which Plaintiff was still emotional and crying. When he tried to go to the bathroom to collect himself, another PPACS staff member chased him out of the bathroom, out of the stairs, and yelled over the radio, "we have a runner, we have a runner" – all while Plaintiff was in the midst of a mental health crisis and was having a panic attack directly resulting from school bullying by PPACS students.

68.    Plaintiff's special education teacher/case manager, Ms. Lara Appelbaum, and his school counselor, Ms. Nicole Steubben, as well as his biology teacher, Mr. Justin Corona, frequently spoke to Plaintiff throughout his 10th grade school year about the bullying situations that were occurring at school and they reported many of those specific incidents to Defendant PPACS's administrators, including but not limited to Defendants Anthony Miller and Charmaine Bailey.

69.    Despite this knowledge, Defendant PPACS failed to conduct prompt, thorough, or impartial investigations, failed to implement effective remedial measures, and failed to directly address and/or stop the harassment and bullying and to discipline the students who were harassing and bullying Plaintiff.

70. The failures described herein caused Plaintiff to undergo additional harassment that would not otherwise have occurred and made Plaintiff increasingly vulnerable to further harassment, intimidation, humiliation, and physical assault by other students.

71. Instead, Defendant PPACS relied primarily on untrained or hostile school security guards that school year to monitor and respond to the bullying incidents, but their actions were hostile toward Plaintiff and often worsened or exacerbated many of the situations – making Plaintiff feel even more isolated, anxious and unsafe in school.

72. The PPACS staff and administrators repeatedly treated Plaintiff as a behavioral or disciplinary problem rather than a victim of discrimination and abuse and they improperly ignored and/or failed to address the underlying bullying behaviors of his peers and the failures and improper actions of PPACS staff.

73. Both Plaintiff and his mother reported the bullying and mistreatment of Plaintiff at school many times that school year to individual PPACS staff, including Ms. Appelbaum, Ms. Steubben and Mr. Corona.

74. These reports were regularly communicated by Ms. Appelbaum, Ms. Steubben and Mr. Corona to PPACS administration, including but not limited to Defendants Anthony Miller and Charmaine Bailey, as well as to Ms. Belinda Wilson, a school administrator, but PPACS's administrators failed to take the reports seriously, failed to conduct a reasonable investigation, and failed to address and/or stop the bullying.

75. The reports described herein were communicated directly to principals, deans, climate and culture personnel, counselors, and other administrators with authority to institute corrective measures on behalf of Defendant PPACS.

76.    By no later than the 2021-2022 school year, Defendants Anthony Miller and Charmaine Bailey were repeatedly informed that students were calling Plaintiff "faggot," "girl," and similar homophobic and sex-based slurs and that Plaintiff was being targeted because of his perceived femininity, gender expression, and sexual orientation.

77.    Throughout Plaintiff's enrollment at PPACS, school personnel were repeatedly informed that students were calling Plaintiff "faggot," "girl," and similar homophobic and sex-based slurs, mocking his appearance and mannerisms, questioning why he was not wearing a dress, and targeting him because he was perceived as gay, feminine, and gender nonconforming. Accordingly, Defendants Anthony Miller, Charmaine Bailey, and other PPACS officials were aware that Plaintiff was being subjected to sex-based harassment and discrimination rather than ordinary peer conflict, personality disputes, or generalized bullying.

78.    Despite possessing actual knowledge of the discriminatory nature of the harassment, Defendants Anthony Miller and Charmaine Bailey failed to implement effective remedial measures reasonably calculated to stop the harassment.

79.    The repeated failures of Defendant PPACS administrators to investigate complaints, implement effective remedial measures, discipline offenders, and protect Plaintiff occurred over a period of multiple school years and involved numerous administrators, teachers, counselors, climate and culture personnel, and security personnel.

80.    These repeated failures reflected institutional practices and customs concerning the handling of complaints involving sex-based harassment and harassment directed at LGBTQIA+ students and students perceived as gender nonconforming.

81.    Notably, in Plaintiff's March 10, 2022 IEP, Plaintiff's school counselor specifically reported that Plaintiff had been struggling with significant anxiety the entire 2021-2022 school

year and that his bullying experiences had contributed to his anxiety, but PPACS failed to meaningfully address these issues to prevent the bullying from occurring and to ensure Plaintiff's safety and well-being.

82.     On or around March 28, 2022, Plaintiff was involved in a serious incident where he got upset while in class, was experiencing a panic attack, and left the classroom to visit his school counselor, Ms. Steubben.

83.     Because another student was meeting with Ms. Steubben at that time, he began walking around the 7th floor of the PPACS school building in circles, waiting his turn, but still physically upset and crying.

84.     While Plaintiff was still having a panic attack and was physically upset and crying, he was intercepted and confronted by PPACS staff, Defendant Charmaine Bailey (High School Dean) and Matthew Menshner (Dean of Professional Development and Support).

85.     While observing that Plaintiff was still having a panic attack and was physically upset and crying, Defendant Charmaine Bailey and Mr. Menshner yelled at Plaintiff for being in the hallway and told him he had to go with them.

86.     In response, Plaintiff tried to walk by Defendant Bailey in the narrow hallway and she (a school employee) physically blocked him from proceeding down the hall and then she shoved Plaintiff into a wall so forcefully that his shoe fell off and flew down the hall.

87.     Defendant Bailey then forced Plaintiff to leave the school building, without his coat, and left him alone outside in the extreme cold – while Plaintiff was crying and trying to get back inside the school building.

88.     At the time Defendant Charmaine Bailey physically blocked, shoved, and removed Plaintiff from the school building, Plaintiff posed no threat to Defendant Charmaine Bailey, school staff, or other students and was visibly crying and experiencing a panic attack.

89.     After approximately 30 minutes of Plaintiff standing outside in the extreme cold crying, Ms. Steubben went outside to get Plaintiff, gave him his coat and brought him inside to wait for his mother to pick him up.

90.     At all relevant times during the incident, Defendant Charmaine Bailey was acting in her capacity as Dean of the High School and exercising authority delegated to her by Defendant PPACS concerning student supervision, discipline, school safety, and student behavioral management.

91.     Defendant Charmaine Bailey engaged in the conduct described herein while acting under color of state law and while exercising authority derived from her position as a PPACS administrator.

92.     Prior to the March 2022 incident, Defendant Charmaine Bailey was aware of Plaintiff's history of bullying complaints, anxiety, panic attacks, and reports of harassment based on his sexual orientation and gender expression. Despite that knowledge, Defendant Bailey treated Plaintiff as a disciplinary problem rather than a victim of harassment, physically blocked and shoved Plaintiff while he was visibly experiencing a panic attack, removed him from the school building, and failed to take reasonable steps to address the ongoing harassment directed toward him.

93.     Following this incident, Defendant PPACS suspended Plaintiff and failed to provide any transparency regarding the incident, refusing to allow Plaintiff's mother to view the video recording of what occurred.

94.     As a result of this incident, and in light of the actions of these PPACS school employees, Plaintiff began feeling even more threatened, unsupported and unwelcome in the PPACS school environment. He believed that his teachers were not there for him and he became increasingly disillusioned with school.

95.     During the remainder of Plaintiff's 10th grade school year, the relentless harassment and bullying on the basis of sex/gender, gender stereotyping and sexual orientation continued and Plaintiff continued to report incidents to his school counselor, Ms. Steubben, who shared them with PPACS school administration – but none of those incidents were investigated or addressed by Defendant PPACS.

### 11th Grade School Year (2022-2023)

96.     During Plaintiff's 11th grade school year (2022-2023), the severe and pervasive bullying continued for Plaintiff at school and the verbal torment and abuse, slurs, and physical aggression increased.

97.     During Plaintiff's 11th grade school year (2022-2023), PPACS terminated Ms. Lara Appelbaum and Ms. Nicole Steubben, and Mr. Corona left his employment with PPACS in December 2022. As a result, the only PPACS employees whom Plaintiff trusted and viewed as safe and supportive adults during the prior school year were no longer employed by the school. Their departures further exacerbated Plaintiff's isolation, anxiety, and sense of vulnerability and left him without trusted school personnel to whom he could report harassment, seek assistance, or obtain support while experiencing the ongoing hostile educational environment described herein.

98.     To Plaintiff, PPACS felt like a prison, not a school. Plaintiff was not learning, was not completing any work, was struggling with attendance, was not sleeping properly, and was feeling more anxious, depressed, and isolated. Plaintiff did not want to go to school because of the

18

constant and severe bullying. He considered going to school virtually even though distance learning had not been successful for him during the pandemic.

99.     During the 11th grade school year, in addition to the constant peer bullying, there were some more extreme interactions involving Plaintiff and Defendant PPACS's staff – particularly two school security guards, Defendants Jeanie Wise and Nina Wise – which harmed Plaintiff.

100.    Defendants Jeanie Wise and Nina Wise knew that Plaintiff frequently sought refuge in hallways, stairwells, alternative restrooms, and other locations to avoid ongoing bullying and harassment. Despite knowing that Plaintiff had permission to use alternative restrooms and the elevator due to documented disability-related needs, they repeatedly prevented him from using approved accommodations, pursued him through the school, returned him to environments where harassment was occurring, and treated him as a disciplinary problem rather than a student seeking protection.

101.    On or around November 28, 2022, while students were in Ms. Jodi's class and while Plaintiff was working, a couple of PPACS students mocked Plaintiff for looking, talking, and walking "weird."

102.    When Plaintiff gave them a dirty look and walked away, one of those students, Student L.T., walked up to Plaintiff, called him a "faggot", and then tried to physically push Plaintiff in order to start a fight.

103.    Plaintiff responded by spitting at Student L.T.'s feet and saying, "Eat my faggoty spit".

104. Student L.T. – who was younger but physically much larger than Plaintiff – then violently assaulted Plaintiff by grabbing Plaintiff, throwing him to the ground, and physically beating on him – all of which was recorded on video.

105. Even after the initial physical assault ended, Student L.T. kept going back to Plaintiff in an attempt to continue fighting.

106. As a result of being physically beaten by Student L.T. after being called a "faggot" by Student L.T., Plaintiff had visible injuries, including bruising and cuts on his head and face, and his eyeglasses were broken.

107. Plaintiff texted pictures of his injuries to his mother, after which Plaintiff's mother called the school and spoke to Defendant Nina Wise, and told her to send Plaintiff to the nurse's office due to his injuries.

108. Plaintiff's mother drove to PPACS, went to the front desk, and was told to wait in the school lobby. The teacher, Ms. Jodi, then came to the school lobby and was crying and physically shaking. Ms. Jodi told Plaintiff's mother that she had tried to have the other student, Student L.T. removed from her classroom multiple times, but the PPACS administration had ignored her requests.

109. Ms. Jodi said that Student L.T. was an "animal" and "I can't believe what I just witnessed."

110. After approximately 20 minutes of being forced to wait in the lobby, Plaintiff's mother was finally permitted to go upstairs to see Plaintiff and she observed cuts, scrapes and a large bump on his head. Plaintiff complained that he had a headache and his eyes hurt, and Plaintiff's mother had to direct the PPACS staff to give Plaintiff an ice pack.

111.    Plaintiff's mother later reported the physical assault that occurred in a PPACS classroom to the Philadelphia Police Department.

112.    In response to this incident, Defendant PPACS failed to fully investigate what had occurred and instead suspended Plaintiff from school for ten days – once again punishing Plaintiff more harshly than his assailant, Student L.T., who received a three-day suspension.

113.    Approximately five days after the incident, Plaintiff and his mother attended a meeting at PPACS with school representatives. During the meeting, Defendant Anthony Miller, PPACS's Head of Climate and Culture, was aggressive and hostile toward Plaintiff and his mother, accused Plaintiff of "playing the victim," and threatened Plaintiff with expulsion until another PPACS administrator, Mr. Jack Carr, intervened.

114.    At the time of the meeting, Defendant Anthony Miller knew that Student L.T. had called Plaintiff a "faggot" immediately before physically assaulting him, knew of Plaintiff's longstanding history of reporting homophobic and other sex-based harassment, and knew that Plaintiff and his mother had repeatedly complained that PPACS had failed to protect Plaintiff from discrimination. Despite this knowledge, Defendant Miller focused his criticism on Plaintiff rather than on the student who physically assaulted him.

115.    During and immediately following the meeting, Plaintiff's mother expressly informed Defendant Anthony Miller and other PPACS representatives that Plaintiff had been subjected for years to harassment and discrimination because he was gay, because he was perceived as feminine, because he did not conform to traditional male gender stereotypes, and because of his gender expression. Plaintiff's mother further explained that Student L.T.'s assault occurred immediately after Student L.T. called Plaintiff a "faggot," that the assault was part of the longstanding pattern of sex-based harassment Plaintiff had experienced at PPACS, and that

21

PPACS had repeatedly failed to adequately investigate, address, or stop the discrimination despite years of complaints.

116. At the time of the meeting, Defendant Anthony Miller and other PPACS administrators were aware that Plaintiff had experienced severe anxiety, depression, panic attacks, school avoidance, emotional distress, declining attendance, and declining academic performance as a result of the ongoing harassment and hostile educational environment. Despite that knowledge, despite years of reports concerning harassment based on Plaintiff's sexual orientation, gender expression, perceived femininity, and failure to conform to traditional male stereotypes, and despite knowing that Student L.T. had called Plaintiff a "faggot" immediately before physically assaulting him, Defendant Miller accused Plaintiff of "playing the victim," focused criticism on Plaintiff rather than the student who assaulted him, and threatened Plaintiff with expulsion.

117. Despite knowing that Student L.T. had called Plaintiff a "faggot" immediately before physically assaulting him, and despite knowing that Plaintiff and his mother had repeatedly complained about years of sex-based harassment and discrimination, Defendant PPACS suspended Plaintiff for ten days while imposing only a three-day suspension on Student L.T. Upon information and belief, Student L.T. had no prior complaints of comparable victimization by Plaintiff.

118. Following Plaintiff's and his mother's repeated complaints concerning discrimination and harassment, PPACS administrators increasingly treated Plaintiff as a disciplinary problem, imposed discipline more frequently and more severely upon Plaintiff, and responded with hostility to Plaintiff's efforts to obtain protection from harassment.

119.    While Plaintiff remained enrolled in school following this incident, things began to further spiral downward for Plaintiff – he was struggling emotionally with his depression and anxiety, his attendance was poor, and he was not able to complete a full day at school.

120.    By January 2023, Plaintiff's mental health had deteriorated so significantly that Plaintiff was failing multiple classes and, his mother reported to PPACS that he was "not in a good place mentally." Yet, Defendant PPACS failed and/or refused to help Plaintiff, to investigate, and/or to remediate the hostile environment and to end the ongoing bullying.

121.    Plaintiff's mother was left with no choice but to withdraw Plaintiff from PPACS on January 11, 2023 and to enroll him at a Pennsylvania cyber charter school.

122.    By the time Plaintiff withdrew from PPACS, Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise were each aware that Plaintiff had repeatedly reported harassment based upon his sexual orientation, gender expression, and perceived failure to conform to male stereotypes, and were further aware that the harassment had caused significant emotional distress, anxiety, depression, school avoidance, and educational harm. Nevertheless, Defendants failed to take effective measures reasonably calculated to stop the harassment and instead repeatedly treated Plaintiff as a disciplinary problem rather than a victim of discrimination.

123.    As a result of Defendant PPACS's repeated failures to investigate and remedy known sex-based harassment, the conduct of Defendant Anthony Miller, Defendant Charmaine Bailey, Defendant Jeanie Wise, Defendant Nina Wise, and other PPACS employees, and the hostile educational environment described herein, Plaintiff suffered significant emotional, psychological, and educational harm and was deprived of equal access to the educational opportunities and benefits offered by PPACS.

124.    Plaintiff suffered physical injury, severe emotional distress, long-term psychological trauma, educational disruption, and economic loss at the hands of the adult individuals who had a duty to educate him, to keep him safe, to protect him, and to not permit sex/gender and sexual orientation-based harassment and bullying in school.

125.    Plaintiff has received and will continue to require psychiatric and therapeutic treatment as a direct and proximate result of Defendants' unlawful conduct.

### COUNT I – TITLE IX SEX-BASED HARASSMENT, HOSTILE EDUCATIONAL ENVIRONMENT, AND DELIBERATE INDIFFERENCE, 20 U.S.C. § 1681 *et seq.* Plaintiff v. Defendant PPACS

126.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

127.    Defendant PPACS is a recipient of Federal financial assistance within the meaning of Title IX, 20 U.S.C. § 1681(a).

128.    Plaintiff was subjected to severe, pervasive, and objectively offensive sex-based harassment based upon sex, gender nonconformity, gender stereotyping, and actual or perceived sexual orientation.

129.    The harassment included repeated verbal slurs, physical assaults, intimidation, humiliation, exclusion and interference with Plaintiff's participation in educational programs and activities.

130.    Defendant PPACS had substantial control over the students and the personnel who harassed Plaintiff and the context in which they harassed him.

131.    Defendant PPACS is liable under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX") because:

a. Plaintiff was subjected to harassment based on sex, including gender nonconformity, gender stereotyping, and Plaintiff's actual or perceived sexual orientation;

b. The harassment was severe, pervasive, and objectively offensive;

c. Defendant PPACS exercised substantial control over both the harassers and the context in which the harassment occurred;

d. Appropriate persons employed by Defendant PPACS had actual knowledge of the harassment;

e. Defendant PPACS responded with deliberate indifference to known acts of harassment; and

f. Defendant PPACS's deliberate indifference caused Plaintiff to undergo further harassment and/or made him vulnerable to further harassment and deprived him of equal access to educational opportunities and benefits.

132. Appropriate persons employed by Defendant PPACS, including principals, deans, climate and culture personnel, counselors, and other administrators with authority to institute corrective measures, had actual knowledge of the sex-based harassment through repeated reports by Plaintiff and his mother, direct observations of harassment, reports from teachers and counselors, educational records, evaluations, IEP documentation, behavioral assessments, and their direct involvement in incidents affecting Plaintiff.

133. Despite actual knowledge, Defendant PPACS acted with deliberate indifference to the sex-based harassment that Plaintiff was experiencing at school by, among other things:

a. Failing to promptly and reasonably investigate complaints;

b.  Failing to take immediate, effective remedial steps to resolve the complaints of sex-based harassment;

c.  Ignoring, dismissing, and/or mocking Plaintiff and the reports of the serious impact the harassment was having on his mental health;

d.  Blaming and further victimizing Plaintiff for the harassment he was experiencing;

e.  Failing to discipline known harassers;

f.  Punishing Plaintiff instead of perpetrators;

g.  Failing to implement effective supportive measures reasonably calculated to stop the harassment and restore Plaintiff's equal access to education;

h.  Failing to initiate any Title IX process, provide information regarding available Title IX protections and supportive measures, or otherwise respond appropriately to repeated reports of sex-based harassment;

i.  Allowing harassment to continue openly and repeatedly; and

j.  Engaging in retaliatory and hostile conduct toward Plaintiff.

134. Defendant PPACSs responses to known incidents of sex-based harassment were clearly unreasonable in light of the known circumstances.

135. For years, Defendant PPACS received repeated reports that Plaintiff was being targeted because he was gay, because he was perceived as feminine, because he did not conform to traditional male stereotypes, and because of his gender expression. Despite documented emotional harm, escalating verbal and physical harassment, multiple physical assaults, and repeated complaints by Plaintiff, his mother, teachers, counselors, and other staff, Defendant

PPACS failed to take measures reasonably calculated to stop the harassment and protect Plaintiff's equal access to education.

136. Defendant PPACS's deliberate indifference subjected Plaintiff to further harassment and made him vulnerable to escalating harm.

137. Defendant PPACS's repeated failures to investigate complaints, discipline offenders, implement effective remedial measures, and communicate that sex-based harassment would not be tolerated caused Plaintiff to suffer additional harassment and emboldened students to continue harassing him.

138. As a direct and proximate result of Defendant PPACS's deliberate indifference, Plaintiff was denied equal access to educational opportunities and benefits provided by the school, his grades and academic performance suffered, he suffered severe emotional distress and psychological harm, and was ultimately forced to withdraw from PPACS.

139. Defendant PPACS's failure to promptly and appropriately respond to the sex-based harassment of Plaintiff resulted in Plaintiff, on the basis of his sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Defendant PPACS's education programs in violation of Title IX.

140. Defendant PPACS persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

141. If Defendant PPACS had taken appropriate steps to address the harassment and protect Plaintiff, his educational losses could have been avoided.

142. Defendant PPACS is liable to Plaintiff under Title IX.

**COUNT II – TITLE IX RETALIATION,**
**20 U.S.C. § 1681 *et seq.***
**Plaintiff v. Defendant PPACS**

143.   Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

144.   Retaliation against an individual because that individual has complained of sex discrimination or sex-based harassment constitutes intentional discrimination prohibited by Title IX.

145.   Plaintiff and his mother repeatedly engaged in protected activity by reporting sex-based harassment, discrimination based upon sex, gender stereotyping, gender nonconformity, gender expression, and actual or perceived sexual orientation; requesting investigations and protection from ongoing harassment; challenging Defendant PPACS's handling of harassment complaints; and advocating for Plaintiff's right to equal access to educational opportunities and benefits.

146.   Those complaints expressly informed PPACS personnel that Plaintiff was being targeted because he was gay, because he was perceived as feminine, because he did not conform to traditional male stereotypes, and because of his gender expression.

147.   After Plaintiff and his mother engaged in protected activity, Defendant PPACS took materially adverse actions against Plaintiff, including:

   a.   Disproportionate discipline against Plaintiff;

   b.   Increased surveillance and punishment;

   c.   Hostile treatment by administrators and security staff;

   d.   Characterizing Plaintiff as a problem or "playing the victim";

28

e.  Failing to take prompt and appropriate action to protect him after complaints were made; and

f.  Refusing to provide meaningful protection from ongoing harassment despite repeated complaints.

148.    Following Plaintiff's and his mother's repeated complaints concerning sex-based harassment and discrimination, PPACS officials increasingly treated Plaintiff as a disciplinary problem rather than a victim of harassment, responded with hostility to Plaintiff's requests for protection, characterized Plaintiff as "playing the victim," threatened Plaintiff with expulsion, imposed disproportionately severe discipline, and otherwise treated Plaintiff less favorably after protected complaints were made.

149.    The temporal relationship between Plaintiff's protected activity and Defendant PPACS's adverse actions, together with Defendant PPACS's escalating hostility toward Plaintiff and his mother, support a reasonable inference that Plaintiff's protected activity was a substantial motivating factor in Defendant PPACS's treatment of Plaintiff.

150.    Defendant PPACS's actions would dissuade a reasonable student or parent from reporting sex-based harassment or pursuing rights protected by Title IX.

151.    Defendant PPACS's retaliatory actions caused Plaintiff additional emotional distress, educational harm, loss of educational opportunities, and further interfered with Plaintiff's ability to safely access and participate in PPACS's educational programs and activities.

152.    By retaliating against Plaintiff because he and his mother opposed sex-based harassment and discrimination and sought protection from such conduct, Defendant PPACS violated Title IX.

29

## COUNT III – MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
### (Monell Claim Against Defendant PPACS)
### Plaintiff v. Defendant PPACS

153.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

154.    Plaintiff possessed clearly established rights under the Equal Protection Clause of the Fourteenth Amendment to be free from intentional discrimination based upon sex, gender nonconformity, gender stereotyping, gender expression, and actual or perceived sexual orientation.

155.    Defendant PPACS acted under color of state law at all times relevant hereto.

156.    At all relevant times, Defendant PPACS maintained policies, customs, practices, training protocols, supervisory systems, and disciplinary procedures governing the investigation of harassment complaints, student discipline, school safety, and school climate.

157.    Defendant PPACS failed to adequately train, supervise, and monitor administrators, teachers, counselors, security personnel, and other employees responsible for investigating, responding to, and remedying complaints of sex-based harassment and discrimination.

158.    Despite years of repeated complaints that Plaintiff was being subjected to harassment because he was gay, because he was perceived as feminine, because he did not conform to traditional male stereotypes, and because of his gender expression, Defendant PPACS failed to ensure that employees responsible for student safety, discipline, climate and culture, and harassment investigations received adequate training regarding Title IX obligations, sex-based harassment, LGBTQIA+ harassment, and appropriate responses to discrimination complaints.

159.    The recurring nature of Plaintiff's complaints placed Defendant PPACS on actual notice of the need to adequately train, supervise, and monitor employees responsible for investigating and responding to complaints of sex-based harassment and discrimination.

30

160.    As demonstrated by the conduct described herein, Defendant PPACS's employees repeatedly failed to appropriately investigate complaints, implement effective remedial measures, protect Plaintiff from known harassment, and respond appropriately to reports of sex-based discrimination.

161.    Over a period of many years, Defendant PPACS repeatedly received reports that Plaintiff was being subjected to sex-based harassment and discrimination, yet repeatedly failed to conduct adequate investigations, failed to implement effective remedial measures, failed to discipline known offenders, and instead frequently disciplined Plaintiff.

162.    These repeated responses reflected institutional customs, practices, and policies concerning the handling of complaints involving sex-based harassment and harassment directed toward LGBTQIA+ students and students perceived as gender nonconforming.

163.    Defendant PPACS maintained customs, practices, and policies that included minimizing complaints of sex-based harassment, failing to adequately investigate complaints, relying upon untrained personnel to respond to harassment complaints, retaliating against complainants, and disciplining victims rather than perpetrators.

164.    The conduct described herein occurred repeatedly over multiple school years and involved numerous employees, administrators, counselors, climate and culture personnel, and security staff, supporting a reasonable inference that the actions were the product of institutional customs and practices rather than isolated misconduct by individual employees.

165.    Defendant Anthony Miller and other senior administrators responsible for student discipline, student safety, bullying investigations, and school climate exercised final or delegated authority over the investigation and resolution of harassment complaints.

31

166. The actions and omissions of those officials concerning Plaintiff's complaints were ratified, approved, knowingly permitted, or otherwise adopted by Defendant PPACS and therefore constituted official policy, custom, or practice attributable to Defendant PPACS.

167. Defendant PPACS's policies, customs, practices, failures to train, failures to supervise, and ratification of unconstitutional conduct were deliberately indifferent to Plaintiff's constitutional rights and were the moving force behind the deprivation of those rights.

168. The policies, customs, practices, failures to train, failures to supervise, and ratification described herein caused and contributed to the constitutional violations committed against Plaintiff by PPACS employees acting under color of state law, including the intentional discrimination and denial of equal protection alleged in this Complaint.

169. As a direct and proximate result of Defendant PPACS's policies, customs, practices, failures to train, failures to supervise, and ratification of unconstitutional conduct, Plaintiff suffered physical injuries, emotional distress, psychological trauma, educational harm, loss of educational opportunities, and other damages as described herein.

170. Had Defendant PPACS adequately trained and supervised employees responsible for student safety, discipline, climate and culture, and harassment investigations, Plaintiff's repeated complaints would have been appropriately investigated, effective remedial measures would have been implemented, and the continuing harassment described herein would have been substantially reduced or prevented.

171. Defendant PPACS is liable to Plaintiff under 42 U.S.C. § 1983.

## COUNT IV – DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983
### Plaintiff v. Defendants Charmaine Bailey, Anthony Miller, Jeanie Wise, and Nina Wise

172. Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

173. At all times relevant hereto, Defendants Charmaine Bailey, Anthony Miller, Jeanie Wise, and Nina Wise acted under color of state law as employees, administrators, security personnel, and/or agents of Defendant PPACS.

174. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally discriminating against individuals on the basis of sex.

175. Discrimination based upon a student's failure to conform to traditional sex stereotypes, gender nonconformity, gender expression, and actual or perceived sexual orientation constitutes discrimination because of sex for purposes of the Equal Protection Clause.

176. Plaintiff was repeatedly subjected to harassment because of his sex, including his failure to conform to traditional male gender stereotypes, his gender expression, his perceived femininity, and his actual or perceived sexual orientation.

177. Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise had actual knowledge that Plaintiff was being targeted because of his sex, gender nonconformity, failure to conform to traditional male stereotypes, gender expression, and actual or perceived sexual orientation.

178. Defendant, Anthony Miller, as Head of Climate and Culture, received repeated reports over multiple school years from Plaintiff, Plaintiff's mother, teachers, counselors, and administrators concerning the ongoing sex-based harassment directed at Plaintiff and had authority

to investigate complaints, implement corrective measures, recommend discipline, and address student safety and school climate issues.

179.    Despite possessing actual knowledge of the harassment and its discriminatory basis, Defendant Anthony Miller repeatedly failed and refused to take reasonable steps to investigate, stop, or remediate the harassment, treated Plaintiff as the problem rather than the victim, minimized complaints of discrimination, accused Plaintiff of "playing the victim," threatened Plaintiff with expulsion, and contributed to a school environment in which sex-based harassment of Plaintiff was tolerated.

180.    Defendant Charmaine Bailey, as Dean of the High School, also received repeated reports concerning the ongoing sex-based harassment directed at Plaintiff and possessed authority to investigate complaints, implement corrective measures, recommend discipline, and address student safety and school climate issues.

181.    Despite possessing actual knowledge of the harassment and its discriminatory basis, Defendant Charmaine Bailey repeatedly failed and refused to take reasonable steps to investigate, stop, or remediate the harassment, treated Plaintiff as the problem rather than the victim, minimized complaints of discrimination, and contributed to a school environment in which sex-based harassment of Plaintiff was tolerated.

182.    Despite observing Plaintiff experiencing a panic attack and emotional crisis, Defendant Charmaine Bailey physically blocked Plaintiff's path, shoved Plaintiff into a wall, removed him from the school building, and left him outside in extreme cold weather while Plaintiff was crying and attempting to regain access to the school building.

183.    Defendant Jeanie Wise and Nina Wise knew that Plaintiff repeatedly sought refuge in hallways, stairwells, alternative restrooms, and other locations to avoid ongoing bullying and

harassment. Despite knowing that Plaintiff had permission to use certain accommodations – including access to the staff bathroom and elevator – and despite knowing of Plaintiff's repeated complaints of harassment, they repeatedly interfered with those accommodations, pursued Plaintiff through the hallways and stairwells of the school, treated Plaintiff as a disciplinary problem, and failed to provide meaningful protection from ongoing harassment.

184.    Defendants Jeanie Wise and Nina Wise were aware that Plaintiff had repeatedly reported harassment based upon his sexual orientation, gender expression, perceived femininity, and failure to conform to traditional male stereotypes. Despite that knowledge, they repeatedly treated Plaintiff as a disciplinary problem rather than a student seeking protection from ongoing harassment and failed to take reasonable steps to assist or protect him.

185.    Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise knew that Plaintiff had repeatedly complained of sex-based harassment and knew that Plaintiff's mother had repeatedly advocated on Plaintiff's behalf regarding discrimination, bullying, and school misconduct.

186.    Despite possessing actual knowledge that Plaintiff was being targeted because he was perceived as feminine, because he did not conform to traditional male stereotypes, and because he was gay, Defendants repeatedly failed to protect Plaintiff, minimized complaints of discrimination, subjected Plaintiff to hostile and punitive treatment, and treated Plaintiff less favorably than students who were not subjected to comparable sex-based harassment.

187.    Students who directed homophobic slurs at Plaintiff, physically assaulted Plaintiff, and engaged in comparable or more serious misconduct were frequently not disciplined or were disciplined less severely than Plaintiff.

188. Following the November 2022 assault, Plaintiff received a ten-day suspension while Student L.T., who physically assaulted Plaintiff, received only a three-day suspension.

189. Upon information and belief, PPACS administrators responded more promptly and more favorably to complaints of student misconduct and harassment made by students who were not perceived as gay, gender nonconforming, or outside traditional sex stereotypes, and those students were not subjected to the same pattern of dismissal, hostility, disproportionate discipline, or failure to protect experienced by Plaintiff.

190. Defendants repeatedly discounted Plaintiff's complaints, characterized Plaintiff as the problem rather than the victim, and imposed discipline upon Plaintiff in circumstances where he was responding to ongoing harassment, and failed to provide meaningful protection from ongoing discrimination.

191. The actions and omissions of Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise, individually and collectively, support a reasonable inference that Plaintiff's sex, gender nonconformity, gender expression, and actual or perceived sexual orientation were substantial and motivating factors in their treatment of Plaintiff.

192. Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise intentionally denied Plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment.

193. As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered physical injuries, emotional distress, psychological trauma, educational harm, loss of educational opportunities, and other damages.

194.    Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise acted intentionally, willfully, maliciously, recklessly, and/or with callous indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

195.    Plaintiff seeks compensatory damages from all Defendants named in this Count and punitive damages against Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise, together with attorneys' fees under 42 U.S.C. § 1988, costs, interest, and such other relief as the Court deems just and appropriate.

### COUNT V – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 *et seq.* Plaintiff v. Defendant PPACS

196.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

197.    Defendant PPACS is a place of public accommodation within the meaning of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 954(l).

198.    The PHRA prohibits discrimination on the basis of sex in places of public accommodation, including schools.

199.    Plaintiff was subjected to ongoing harassment because of his sex, including his failure to conform to traditional male gender stereotypes, his gender expression, and his actual or perceived sexual orientation.

200.    The harassment directed at Plaintiff was severe, pervasive, objectively offensive, unwanted, and continuous.

201.    The harassment interfered with Plaintiff's education, deprived him of educational opportunities and benefits, caused him to miss school, negatively affected his academic

performance, and substantially impaired his ability to safely access PPACS's educational programs and activities.

202. As a result of the harassment, Plaintiff suffered emotional distress, anxiety, depression, psychological trauma, educational harm, and other damages described herein.

203. Defendant PPACS had actual and constructive notice that Plaintiff was being subjected to sex-based harassment through repeated reports by Plaintiff, Plaintiff's mother, teachers, counselors, administrators, educational records, evaluations, and direct observations by PPACS personnel.

204. Defendant PPACS received repeated reports that Plaintiff was being targeted because he was gay, because he was perceived as feminine, because he did not conform to traditional male stereotypes, and because of his gender expression.

205. Despite possessing actual and constructive notice of the harassment and its discriminatory basis, Defendant PPACS failed to take prompt, appropriate, and effective action reasonably calculated to stop the harassment, prevent its recurrence, and remedy its effects.

206. By failing to adequately address known sex-based harassment and discrimination, Defendant PPACS denied Plaintiff the full and equal accommodations, advantages, facilities, privileges, and benefits of a place of public accommodation.

207. Defendant PPACS thereby discriminated against Plaintiff on the basis of sex in violation of the PHRA.

208. The conduct described herein constitutes an unlawful discriminatory practice prohibited by the PHRA.

209.   On November 14, 2024, Plaintiff filed a verified complaint against Defendant PPACS with the Pennsylvania Human Relations Commission, docketed at PHRC Case No. 2024-00902.

210.   More than one year elapsed after the filing of Plaintiff's PHRC complaint, and Plaintiff subsequently received notice of his right to proceed in court.

211.   Plaintiff has exhausted all administrative prerequisites and conditions precedent to maintaining this action under the PHRA.

212.   As a direct and proximate result of Defendant PPACS's unlawful discrimination, Plaintiff suffered physical injuries, emotional distress, psychological trauma, educational harm, loss of educational opportunities, economic damages, and other damages as described herein.

### COUNT VI – RETALIATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(d) Plaintiff v. Defendant PPACS

213.   Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

214.   The PHRA prohibits retaliation against an individual because that individual has opposed discrimination prohibited by the PHRA or has made complaints concerning unlawful discriminatory practices.

215.   Plaintiff and Plaintiff's mother repeatedly engaged in protected activity by reporting harassment and discrimination based upon Plaintiff's sex, gender nonconformity, gender expression, and actual or perceived sexual orientation; requesting investigations and protection from ongoing harassment; challenging Defendant PPACS's handling of discrimination complaints; and advocating for Plaintiff's right to equal access to educational opportunities and benefits.

216. Defendant PPACS was aware of Plaintiff's and Plaintiff's mother's protected activity through repeated complaints made to teachers, counselors, administrators, climate and culture personnel, security personnel, and other school officials.

217. Following Plaintiff's and Plaintiff's mother's repeated complaints concerning discrimination and harassment, Defendant PPACS subjected Plaintiff to materially adverse actions, including treating Plaintiff as a disciplinary problem rather than a victim of harassment, increasing disciplinary scrutiny and punishment, failing to meaningfully investigate complaints, subjecting Plaintiff to hostile treatment by administrators and security personnel, characterizing Plaintiff as "playing the victim," threatening Plaintiff with expulsion, imposing disproportionately severe discipline, and otherwise treating Plaintiff less favorably after protected complaints were made.

218. The adverse actions described herein occurred after and because Plaintiff and his mother repeatedly opposed discrimination and complained about conduct prohibited by the PHRA.

219. The temporal relationship between Plaintiff's protected activity and Defendant PPACS's adverse actions, together with Defendant PPACS's escalating hostility toward Plaintiff and his mother, support a reasonable inference that Plaintiff's protected activity was a substantial motivating factor in Defendant PPACS's treatment of Plaintiff.

220. Defendant PPACS's actions would dissuade a reasonable student or parent from reporting discrimination, opposing unlawful harassment, or asserting rights protected by the PHRA.

221. As a direct and proximate result of Defendant PPACS's retaliatory conduct, Plaintiff suffered emotional distress, humiliation, anxiety, depression, psychological trauma, educational harm, loss of educational opportunities, and other damages described herein.

40

222. The conduct described herein constitutes unlawful retaliation in violation of the PHRA, 43 P.S. § 955(d).

223. As a direct and proximate result of Defendant PPACS's unlawful retaliation, Plaintiff is entitled to all remedies available under the PHRA.

### COUNT VII – BATTERY
### Plaintiff v. Defendant Charmaine Bailey

224. Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

225. Defendant Charmaine Bailey intentionally made harmful and offensive physical contact with Plaintiff.

226. Specifically, while Plaintiff was visibly experiencing a panic attack and emotional crisis and attempting to walk past her in a PPACS school hallway, Defendant Charmaine Bailey intentionally and forcibly shoved Plaintiff into a wall.

227. The force used by Defendant Charmaine Bailey caused Plaintiff's shoe to come off and fly down the hallway.

228. Plaintiff did not consent to the contact.

229. Defendant Charmaine Bailey's conduct constituted a battery under Pennsylvania law.

230. As a direct and proximate result of Defendant Charmaine Bailey's conduct, Plaintiff suffered physical injuries, emotional distress, psychological trauma, humiliation, embarrassment, anxiety, depression, and other damages described herein, and has incurred and/or will incur expenses for medical and psychological treatment.

231. Defendant Charmaine Bailey's conduct was willful, wanton, reckless, malicious, and undertaken with conscious disregard of Plaintiff's rights and safety, thereby entitling Plaintiff to punitive damages to the fullest extent permitted by Pennsylvania law.

## COUNT VIII - ASSAULT
### Plaintiff v. Defendant Charmaine Bailey

232. Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

233. Defendant Charmaine Bailey intentionally engaged in conduct that placed Plaintiff in reasonable apprehension of imminent harmful or offensive physical contact.

234. Specifically, while Plaintiff was visibly experiencing a panic attack and emotional crisis, Defendant Charmaine Bailey physically blocked Plaintiff's path, aggressively confronted him, and positioned herself in a manner that caused Plaintiff to reasonably fear imminent physical contact.

235. Plaintiff reasonably believed that Defendant Charmaine Bailey was about to make harmful or offensive physical contact with him.

236. Immediately thereafter, Defendant Charmaine Bailey intentionally and forcibly shoved Plaintiff into a wall.

237. Defendant Charmaine Bailey's conduct constituted an assault under Pennsylvania law.

238. As a direct and proximate result of Defendant Charmaine Bailey's conduct, Plaintiff suffered emotional distress, psychological trauma, humiliation, embarrassment, anxiety, depression, and other damages described herein, and has incurred and/or will incur expenses for medical and psychological treatment.

42

239. Defendant Charmaine Bailey's conduct was intentional, willful, wanton, reckless, malicious, and undertaken with conscious and callous disregard of Plaintiff's rights and safety, thereby entitling Plaintiff to punitive damages to the fullest extent permitted by Pennsylvania law.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise and Nina Wise

240. Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

241. At all relevant times, Defendants Anthony Miller, Charmaine Bailey, Jeanie Wise, and Nina Wise knew that Plaintiff was a minor student who had been subjected to years of severe bullying, sex-based harassment, discrimination, anxiety, panic attacks, depression, emotional distress, and educational harm.

242. Defendants further knew that Plaintiff and Plaintiff's mother had repeatedly reported the harassment, that Plaintiff's mental health was deteriorating, and that Plaintiff was struggling to safely access his education as a result of the ongoing harassment and hostile educational environment.

243. Despite this knowledge, Defendants intentionally, recklessly, and with conscious disregard for Plaintiff's well-being engaged in conduct including, but not limited to:

    a. Ignoring, minimizing, and dismissing repeated reports of severe sex-based harassment and bullying;

    b. Treating Plaintiff as a disciplinary problem rather than a victim of discrimination and abuse;

    c. Subjecting Plaintiff to hostile, intimidating, and retaliatory treatment after complaints were made;

d.  Interfering with Plaintiff's approved accommodations and efforts to avoid ongoing harassment;

e.  Pursuing and confronting Plaintiff while he was experiencing emotional crises and panic attacks;

f.  Accusing Plaintiff of "playing the victim" after he had been physically assaulted and subjected to homophobic harassment;

g.  Physically blocking, shoving, and forcibly removing Plaintiff from the school building while he was experiencing a panic attack; and

h.  Leaving Plaintiff outside in extreme cold weather while he was crying, emotionally distressed, and attempting to regain access to the school building.

244.  Defendants' conduct, considered collectively and in light of Defendants' knowledge that Plaintiff was a minor student suffering from severe anxiety, panic attacks, depression, and ongoing sex-based harassment, was so extreme and outrageous as to exceed all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

245.  Defendants intended to cause Plaintiff emotional distress or acted with reckless disregard of the substantial certainty that severe emotional distress would result from their conduct.

246.  As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, anxiety, panic attacks, depression, humiliation, emotional anguish, psychological trauma, loss of enjoyment of life, educational harm, and other damages described herein.

247. Plaintiff's severe emotional distress manifested physically through, among other things, panic attacks, gastrointestinal symptoms, physical illness, sleep disturbances, and other stress-related conditions.

248. Plaintiff has required psychological, psychiatric, and therapeutic treatment and will continue to require treatment in the future as a result of Defendants' conduct.

249. Defendants' conduct was willful, wanton, malicious, and undertaken with reckless and conscious disregard for Plaintiff's health, safety, and emotional well-being.

250. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as described herein.

251. Defendants' conduct entitles Plaintiff to punitive damages to the fullest extent permitted by Pennsylvania law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where permitted by law, and award the following relief:

A. Compensatory damages in an amount in excess of the jurisdictional limits of compulsory arbitration for physical injuries, emotional distress, psychological trauma, humiliation, embarrassment, mental anguish, educational harm, loss of educational opportunities, economic losses, medical expenses, counseling expenses, and all other damages recoverable under applicable law;

B. Damages for past and future emotional distress, psychological injury, and loss of life's pleasures;

C.   Punitive damages against the individual Defendants to the fullest extent permitted by law;

D.   Declaratory relief declaring that Defendants' conduct violated Plaintiff's rights under Title IX, 42 U.S.C. § 1983, the Fourteenth Amendment, and the Pennsylvania Human Relations Act;

E.   Appropriate injunctive relief to the extent authorized by law and deemed necessary by the Court;

F.   Reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988, Title IX, the Pennsylvania Human Relations Act, and any other applicable authority;

G.   Pre-judgment interest and post-judgment interest as permitted by law; and

H.   Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 23, 2026                    **TIMONEY KNOX, LLP**

                              BY    /s/ Scott H. Wolpert
                                    Scott H. Wolpert, Esquire (PA 62894)
                                    Christine M. Gordon, Esquire (PA 209391)
                                    400 Maryland Drive
                                    Fort Washington, PA 19034-7544
                                    swolpert@timoneyknox.com
                                    cgordon@timoneyknox.com
                                    Tel. No.: 215-540-2656
                                    Attorneys for Plaintiff, Rocco Polutro

## VERIFICATION

I, Rocco Polutro, being duly sworn according to law, depose and say that I am the Plaintiff

in the within matter and that the facts set forth in the foregoing Complaint are true and correct to

the best of my knowledge, information and belief, and that this statement is made subject to the

penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Signed by:

Rocco Polutro

E63B5CA35A6647A...

Date: 6/22/2026 | 4:50 PM EDT

Rocco Polutro